**IN THE CIRCUIT COURT OF BOONE COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| **SUSANNE PACE**<br><br>on behalf of herself and all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>**LANDMARK BANK**<br><br>Defendant. | **JURY DEMAND**<br><br>Case No. _____ |

**CLASS ACTION COMPLAINT**

Plaintiff Susanne Pace ("Plaintiff"), by counsel, brings this Class Action Complaint against Defendant Landmark Bank ("Landmark" or "Defendant"), and alleges as follows:

**INTRODUCTION**

1. This is a civil action seeking monetary damages, restitution, and injunctive and declaratory relief from Landmark, arising from its improper assessment and collection of multiple $29 fees on an item.

2. Besides being deceptive, this practice breaches contract promises made in Landmark's adhesion contracts, including its duty of good faith and fair dealing.

3. Plaintiff and other Landmark customers have been injured by Landmark's practices.

**PARTIES**

4. Plaintiff is a resident of Fulton, Missouri, and has had a checking account with Landmark at all times material hereto.

1

EXHIBIT "A"

5.     Defendant Landmark Bank is a nationally chartered bank with its headquarters in Columbia, Missouri. It has over $3.1 billion in assets and maintains several branches throughout Missouri, Oklahoma, and Texas.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this matter because Landmark is at home in this State.

7.     Landmark regularly and systematically conducts business and provides retail banking services in this State and provides retail banking services to customers in this State, including Plaintiff and members of the putative Class. As such, it is subject to the jurisdiction of this Court.

8.     Venue is likewise proper in this district pursuant to Mo. Ann. Stat. § 508.010 because Landmark maintains its principal office in this County, conducts business in this County, and a substantial part of the acts and omissions giving rise to this lawsuit occurred in this County.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.     Landmark Improperly Charges Two Or More Fees on an Item

9.     Overdraft fees and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $29.5 billion from overdraft fees. *Overdraft Revenue Inches Up in 2018*, https://bit.ly/3cbHNKV.

10.     Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. *Overdrawn: Consumer Experiences with Overdraft*, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

2

EXHIBIT "A"

11.     Landmark unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

12.     Unbeknownst to consumers, each time Landmark reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Landmark chooses to treat it as a new and unique item that is subject to yet another fee. But Landmark's contract never states that this counterintuitive and deceptive result could be possible and, in fact, promises the opposite.

13.     The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

14.     Plaintiff has a Landmark checking account, which was governed by Landmark's standardized Account Agreement, attached as Ex. A hereto (the "Agreement"), and the Schedule of Fees, attached as Ex. B hereto (the "Fee Schedule" and, together with the Agreement, the "Contract").

15.     The Contract allows Landmark to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Landmark may (a) pay the item and charge a $29 fee; or (b) reject the item and charge a $29 fee.

16.     In contrast to the Contract, however, Landmark regularly assesses two or more $29 fees on an item.

3

EXHIBIT "A"

### A. The Imposition of Multiple Fees on an Item Violates Landmark's Express Promises and Representations

17.  The Contract provides the general terms of Plaintiff's relationship with Landmark, and therein Landmark makes explicit promises and representations regarding how an item will be processed, and how fees may be assessed.

18.  The Agreement promises that "a fee" (singular) will be charged on an item for when the "account lacks sufficient funds available to pay" the item:

> If your account lacks sufficient funds available to pay a check, preauthorized transfer or other debit activity presented for payment as determined by the available balance in your account, we may (1) return the item, *or* (2) pay the item at our discretion….If we return the item without paying it, we may charge you *a non-sufficient funds fee*. If we do pay the item on your behalf, you will be responsible to pay the overdrawn balance and *an overdraft fee*.

Ex. A at 3-4 (emphasis added).

19.  In other words, Landmark promises to assess "a non-sufficient funds fee" (singular) or "an overdraft fee" (singular) on an item when the "account lacks sufficient funds available." *Id.*

20.  In breach of this promise, Landmark assesses multiple non-sufficient funds fees on an item or a nonsufficient funds fee and an overdraft fee on an item.

21.  The Fee Schedule reinforces this promise to assess the "fee" "per item":

> **Overdraft and Insufficient Funds** $29.00 *per item*. *Fee* may be imposed for covering overdrafts created by check, in person withdrawal, ATM withdrawal, or electronic means.

Ex. B (bold italic emphasis added).

22.  Taken together, the Contract thus promises a fee will be assessed on an item, when in fact Landmark regularly charges two or more fees on an item.

4

EXHIBIT "A"

23. The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

24. There is zero indication anywhere in the Contract that the same "item" is eligible to incur multiple fees.

25. Even if Landmark reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

26. Landmark and its members never agreed that Landmark may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

27. In sum, Landmark promised that one fee would be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Landmark breached the Contract when it charged more than one fee per item.

28. Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Contract.

29. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Landmark will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere do Landmark and its customers agree that Landmark will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

EXHIBIT "A"

30.     Customers reasonably understand, based on the language of the Contract, that Landmark's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

31.     Banks and credit unions like Landmark that employ this abusive practice require their accountholders to expressly agree to it.

32.     First Citizens Bank, a major institution in the Carolinas, engages in the same practice as Landmark, but expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Deposit Account Agreement*, First Citizen's Bank (Oct. 2020), https://bit.ly/2GJjSqq (emphasis added).

33.     Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

34.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) an item is submitted to us for payment from your Account when, at the time of posting, your Account is overdrawn or would be overdrawn if we paid the item (whether or not we in fact pay it); or (2) we return, reverse, or decline to pay an item for any other reason authorized by the Terms and Conditions of your account. For these purposes, an item includes a check, an ATM or debit card transaction, an ACH transaction, or

6

EXHIBIT "A"

other withdrawal, transfer or debit. Your account is overdrawn if your Available Balance is less than zero. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**.

*Online Access Agreement*, Klein Bank 17 (Jan. 2013), https://bit.ly/2Fevj8W (emphasis added).

35. The Contract provides no such authorization, and actually promises the opposite—Landmark may charge, at most, a fee on an item.

**B. Plaintiff's Experience**

36. In support of Plaintiff's claim, Plaintiff offers examples of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Landmark: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

37. On or around July 24, 2019, Plaintiff attempted a payment by check for $780.00.

38. Landmark rejected payment of that check due to insufficient funds in Plaintiff's account and charged a $29 fee for doing so.

39. Unbeknownst to Plaintiff and without Plaintiff's request to Landmark to reprocess the item, on or around July 29, 2019, Landmark rejected the same check again and charged Plaintiff a *second* $29 fee for doing so.

40. *In sum, Landmark charged Plaintiff $58 in fees on an item.*

41. On or around September 16, 2019, Plaintiff attempted a single payment via ACH for $56.00.

42. Landmark rejected payment of that item due to insufficient funds in Plaintiff's account and charged a $29 fee for doing so.

7

EXHIBIT "A"

43.     Unbeknownst to Plaintiff and without Plaintiff's request to Landmark to reprocess the item, on or around September 19, 2019, Landmark rejected the item again and charged Plaintiff a *second* $29 fee for doing so.

44.     *In sum, Landmark charged Plaintiff $58 in fees on an item.*

45.     On or around October 16, 2019, Plaintiff attempted a single payment via ACH for $56.00.

46.     Landmark rejected payment of that item due to insufficient funds in Plaintiff's account and charged a $29 fee for doing so.

47.     Unbeknownst to Plaintiff and without Plaintiff's request to Landmark to reprocess the item, on or around October 21, 2019, Landmark paid the item into overdraft and charged Plaintiff a *second* $29 fee for doing so.

48.     *In sum, Landmark charged Plaintiff $58 in fees on an item.*

49.     Plaintiff understood the payment to be a single item as is laid out in the Contract, capable of receiving, at most, a single fee if Landmark returned it, or a single fee if Landmark paid it.

50.     The improper fees charged by Landmark were not errors or "discrepancies," but rather intentional charges made by Landmark as part of its standard processing of items.

51.     Plaintiff therefore had no duty to report the fees as errors or "discrepancies."

52.     Moreover, any such reporting would have been futile as Landmark had made a decision to charge the fees in this specific manner to maximize profits at the expense of customers.

**C. The Imposition of Multiple Fees on an Item Breaches Landmark's Duty of Good Faith and Fair Dealing**

53.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the

8

EXHIBIT "A"

other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Landmark is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Landmark has a duty to honor payment requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements Landmark foisted on Plaintiff and its other customers—Landmark has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Landmark abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees on an item.

54.    When Landmark charges multiple fees on an item, it uses its discretion to define the meaning of "item" in a way that violates common sense and reasonable consumer expectations. Landmark uses its contractual discretion to define that term to choose a meaning that directly causes more fees.

55.    In addition, Landmark exercises its discretion in its own favor and to the prejudice of Plaintiff and its other customers when it reprocesses an item when it knows a customer's account lacks funds and then charges additional fees on an item. Further, Landmark abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Contract. This is a breach of Landmark's duty to engage in fair dealing and to act in good faith.

56.    It was bad faith and totally outside of Plaintiff's reasonable expectations for Landmark to use its discretion to assess two or more fees on an item.

57.    Landmark abuses its discretion and acts in bad faith by defining contract terms in an unreasonable way that violates common sense and by charging multiple fees on an item.

9

EXHIBIT "A"

## CLASS ALLEGATIONS

58.    Plaintiff brings this action individually and on behalf of the following class of persons (the "Class"):

> All Landmark Bank checking account holders who, during the applicable statute of limitations, were charged multiple fees on an item by Landmark Bank.

59.    Plaintiff reserves the right to modify or amend the definition of the Class as this litigation proceeds.

60.    Excluded from the Class are Landmark, its parents, subsidiaries, affiliates, officers and directors, any entity in which Landmark has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

61.    The Class consists of thousands of members, such that joinder of all Class members is impracticable.

62.    There are questions of law and fact that are common to all members of the Class that relate to Landmark's practice of charging fees on multiple fees on an item.

63.    The claims of Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the members of the Class.

64.    Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation that will fairly and adequately protect the interests of the Class.

65.    The class action is an appropriate method for the fair and efficient adjudication of the controversy.

66.     The questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, particularly because the focus of the litigation will be on Landmark's conduct. The predominant questions of law and fact in this litigation include, but are not limited to, whether Landmark:

- Imposed more than one fee on an item;
- Breached its contract with Plaintiff and members of the Class by assessing more than one fee on an item; and
- Breached the covenant of good faith and fair dealing imposed on it.

67.     Other questions of law and fact common to the Class include the proper method or methods by which to measure damages.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Landmark, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Landmark's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of Landmark's conduct and the claims they may possess.

**EXHIBIT "A"**

69.     It appears that other persons who fall within the definitions of the Class set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

70.     This proposed class action does not present any unique management difficulties.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract including Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Class)**

71.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

72.     Plaintiff and Landmark have contracted for bank account deposit, checking, ATM, and debit card services. *See* Exs. A & B.

73.     Landmark mischaracterized in the Contract its true fee practices and breached the express terms of the Contract.

74.     No contract provision authorizes Landmark to charge more than one fee on an item.

75.     Under Missouri law, good faith is an element of every contract. Good faith is also mandated by the Uniform Commercial Code ("UCC"), which covers banking transactions. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

12

EXHIBIT "A"

76.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

77.     Landmark has breached the covenant of good faith and fair dealing through its fee policies and practices as alleged herein.

78.     Landmark harms consumers by abusing its contractual discretion in a number of ways that no reasonable customer would anticipate.

79.     Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them by the Contract.

80.     Plaintiff and members of the Class have sustained damages as a result of Landmark's breach of the Contract and breach of the covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment including the following:

a.      Certification for this matter to proceed as a class action;

b.      Designation of Plaintiff as Class Representative, and designation of the undersigned as Class Counsel;

c.      Restitution of all improper fees paid to Landmark by Plaintiff and the Class, because of the wrongs alleged herein in an amount to be determined at trial;

d.      Actual damages in an amount according to proof;

e.      Pre- and post- judgment interest at the maximum rate permitted by applicable law;

13

EXHIBIT "A"

f.   Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

g.   Attorneys' fees under the common fund doctrine and all other applicable law;

h.   Injunctive and declaratory relief prohibiting Landmark from engaging in the practices outlined herein and declaring such practices unlawful; and

i.   Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: May 13, 2021                              Respectfully submitted,

                                                 /s/ John F. Garvey
                                                 John F. Garvey #35879
                                                 CAREY DANIS & LOWE
                                                 8235 Forsyth, Suite 1100
                                                 St. Louis, MO 63105
                                                 T: 314-725-7700
                                                 F: 314-678-3401
                                                 jgarvey@careydanis.com

                                                 Lynn A. Toops*
                                                 COHEN & MALAD, LLP
                                                 One Indiana Square, Suite 1400
                                                 Indianapolis, IN 46204
                                                 Telephone: 317-636-6481
                                                 Facsimile: 317-636-2593
                                                 ltoops@cohenandmalad.com

                                                 J. Gerard Stranch, IV*
                                                 Martin F. Schubert*
                                                 BRANSTETTER, STRANCH
                                                 & JENNINGS, PLLC
                                                 223 Rosa L. Parks Avenue, Suite 200
                                                 Nashville, Tennessee 37203
                                                 Telephone: (615) 254-8801
                                                 Facsimile: (615) 255-5419
                                                 gerards@bsjfirm.com

EXHIBIT "A"

martys@bsjfirm.com

Christopher D. Jennings*
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com

*Attorneys for Plaintiff and the Putative Class*

\* To Seek Admission *Pro Hac Vice*

## Certificate of Filing

The undersigned hereby certifies that the foregoing Class Action Complaint has been filed by using the Court's electronic case filing system on this 13th day of May, 2021.

_/s/John F. Garvey_

EXHIBIT "A"

# EXHIBIT A

EXHIBIT "A"

**ACCOUNT AGREEMENT**
**CHECKING ACCOUNT**



LANDMARK BANK
PO BOX 1867 COLUMBIA MO 652051867

**DEFINITIONS.** Throughout this Agreement, the terms "you," "your," and "account owner" refer to the Customer whether or not there are one or more Customers named on the account, and the terms "we," "our," and "us" refer to the Bank, LANDMARK BANK.

**GENERAL AGREEMENT.** You understand that the following Account Agreement ("Agreement") governs your Checking account with us, along with any other documents applicable to your account, including all account opening disclosures that have been provided to you, which are incorporated by reference. You understand that your account is also governed by applicable law.

The account opening disclosures include a schedule of fees and charges applicable to the account, minimum balance requirements, and other pertinent information related to the account. The information found in the account opening disclosures may change from time to time in our sole discretion. If the fees, charges, minimum balance requirements, or other items change in a manner that would adversely affect you, we will provide you with written notice 30 days prior to the change. By providing a written or electronic signature on the Account Information document or other agreement to open your account, or by using any of our deposit account services, you and any identified account owners agree to the terms contained in this Account Agreement.

**YOUR CHOICE OF ACCOUNT.** You have instructed us as to the title and type of the account that you have chosen. You acknowledge that it is your sole responsibility to determine the full legal effect of opening and maintaining the type of account you have chosen. We have not set forth all laws that may impact your chosen account. For example, there are conditions that may need to be satisfied before transferring accounts due to death or other events as well as reductions to an account required or permitted by law. You must determine whether the account you select is appropriate for your current and future needs. Except as required by law, we assume no legal responsibility to inform you as to the effect of your account choice on your legal interests.

**JOINT WITH RIGHT OF SURVIVORSHIP ACCOUNT.** The joint tenants (account owners) agree that all funds deposited now or in the future in this account shall be held as joint tenants with right of survivorship and not as tenants in common. Upon the death of a joint tenant, the account balance shall become the property of the surviving joint tenant(s). If there is more than one surviving joint tenant, then the account shall continue to be held as a joint account with right of survivorship. When there is only one surviving joint tenant, the account shall be treated as an individual account.

**TRANSFERS AND ASSIGNMENTS.** We may assign or transfer any or all of our interest in this account. You cannot assign or transfer any interest in your account unless we agree in writing.

**MULTIPLE ACCOUNT OWNERS.** If there is more than one account owner for your account, all deposits are the property of the person(s) indicated on the account. We may release all or any part of the amount in the account to honor checks, withdrawals, orders or requests from any person named on this account. However, the number of signatures on the Account Information form must be met. Any person named on the account is liable for an amount equal to the overdrawn balance plus any overdraft fee regardless of whether he or she signed the item or benefited from the proceeds of the item. Upon receiving written notice from any person named on the account, we may freeze the account. The account may be frozen until we receive written notice, signed by all parties named in the account, as to the disposition of funds. We may also freeze the account upon receipt of notice of the death or incapacity of an account owner until we have received all necessary documentation to establish to whom payment should be made. We may use the funds to satisfy a debt or judgment of any person named on this account if ordered to do so by a court of law.

**POWER OF ATTORNEY.** If you wish to name another person to act as your attorney in fact or agent in connection with your account, we must approve the form of appointment.

**RESTRICTIVE LEGENDS.** We are not required to honor any restrictive legend on checks you write unless we have agreed to the restriction in writing signed by an officer of the Bank. Examples of restrictive legends are "two signatures required", "must be presented within 90 days" or "not valid for more than $1,000.00."

**STALE OR POSTDATED CHECKS.** We reserve the right to pay or dishonor a check more than six (6) months old without prior notice to you. You agree not to postdate any check drawn on the account. If you do, and the check is presented for payment before the date of the check, we may pay it or return it unpaid. We are not liable for paying any stale or postdated check. Any damages you incur that we may be liable for are limited to actual damages not to exceed the amount of the check.

**PREAUTHORIZED CHECKS OR DRAFTS.** You should guard information about your account (such as your routing number and your account number) as carefully as you would guard blank checks. If you voluntarily give such information about your account to a party which is seeking to sell you goods or services, without physically delivering a check to that party, any debit to or withdrawal from your account it initiates will be deemed authorized by you.

© 2001-2018 Compliance Systems, Inc. aee29fb7-cc70b2eb - 2018.367.0.3
Account Agreement - Checking Account DD8001

www.compliancesystems.com



EXHIBIT "A"

**VERIFYING FUNDS AVAILABILITY FOR CHECK.** You authorize us to release funds availability information about your account to individuals or merchants who represent to us that they have received a check from you.

**CHECK SAFEKEEPING.** If you utilize a check safekeeping system or any other system offered by us for the retention of your checks, you understand that the canceled checks will be retained by us and destroyed after a reasonable time period or as required by law. Any request for a copy of any check may be subject to a fee, as indicated in the Schedule of Fees or Disclosures and as allowed by law. If for any reason we cannot provide you with a copy of a check, our liability will be limited to the lesser of the face amount of the check or the actual damages sustained by you.

**SUBSTITUTE CHECKS.** To make check processing faster, federal law permits financial institutions to replace original checks with "substitute checks." These substitute checks are similar in size to the original items with a slightly reduced image of the front and back of the original item. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original item. Some or all of the items that you receive back from us may be substitute checks.

**WITHDRAWALS.** Deposits will be available for withdrawal consistent with the terms of the Disclosures. Withdrawals may be subject to a service charge.

**DEPOSITS.** Deposits may be made in person, by mail, or in another form and manner as agreed by us in our sole discretion. We are not responsible for transactions mailed until we actually receive and record them. We may in our sole discretion refuse to accept particular instruments as a deposit to your account. Cash deposits are credited to your account according to this Agreement. Other items you deposit are handled by us according to our usual collection practices. If an item you deposit is returned unpaid, we will debit your account for the item. You are liable to us for the amount of any check you deposit to your account that is returned unpaid and all costs and expenses related to the collection of all or part of such amount from you. Funds deposited to your account, excluding any Time Deposit accounts, are available in accordance with the Disclosures.

**COLLECTION OF DEPOSITED ITEMS.** In receiving items for deposit or collection, we act only as your agent and assume no responsibility beyond the exercise of ordinary care. All items are credited subject to final settlement in cash or credits. We shall have the right to forward items to correspondents including all Federal Reserve Banks, and we shall not be liable for default or neglect of said correspondents for loss in transit, nor shall any correspondent be liable except for its own negligence. You specifically authorize us or our correspondents to utilize Federal Reserve Banks to handle such items in accordance with provisions of Regulation J (12 CFR Part 210), as revised or amended from time to time by the Federal Reserve Board. In the event we are subject to local clearinghouse rules, you specifically authorize us to handle such items in accordance with the rules and regulations of the clearinghouse.

If we permit you to withdraw funds from your account before final settlement has been made for any deposited item, and final settlement is not made, we have the right to charge your account or obtain a refund from you. In addition, we may charge back any deposited item at any time before final settlement for whatever reason. We shall not be liable for any damages resulting from the exercise of these rights. Except as may be attributable to our lack of good faith or failure to exercise ordinary care, we will not be liable for dishonor resulting from any reversal of credit, return of deposited items or for any damages resulting from any of those actions.

**STATEMENTS.** We will provide you with a periodic statement showing the account activity. The last address you supply us in writing will be deemed the proper address for mailing this statement to you. The account holder who receives this statement is the agent for his/her co-account holder(s) for purposes of receiving the statement and items. You must exercise reasonable care in reviewing your statement and reasonable promptness in notifying us of any discrepancies, such as alterations or forged or unauthorized signatures, even if by the same wrongdoer. Reasonable promptness will not exist if you fail to notify us within 30 days after we mail or otherwise make the statement available to you. If you fail to notify us of any discrepancies, with reasonable promptness, your right to assert such discrepancies will be barred or limited to the extent permitted by law. Additionally, you agree that we will not be liable for discrepancies reported to us after one year after we mail or otherwise make the statement or items available to you, even if we failed to exercise ordinary care. However, if the discrepancy is the result of an electronic fund transfer, the provisions of the Disclosures will control its resolution. If you do not receive a statement from us because you have failed to claim it or have supplied us with an incorrect address, we may stop sending your statements until you specifically make written request that we resume sending your statements and you supply us with a proper address.

**ACH AND WIRE TRANSFERS.** This Agreement is subject to Article 4A of the Uniform Commercial Code - Funds Transfers as adopted in the state of Missouri. If you send or receive a wire transfer, you agree that Fedwire® Funds Service may be used. Federal Reserve Board Regulation J is the law that covers transactions made over Fedwire® Funds Service. When you originate a funds transfer for which Fedwire® Funds Service is used, and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named.

If you are a party to an Automated Clearing House ("ACH") entry, you agree that we may transmit an entry through the ACH, and you agree to be bound by the National Automated Clearing House Association ("NACHA") Operating Rules and Guidelines, the rules of any local ACH, and the rules of any other systems through which the entry is made.



EXHIBIT "A"

**PROVISIONAL PAYMENT.** Credit we give you is provisional until we receive final settlement for that entry. If we do not receive final settlement, you agree that we are entitled to a refund of the amount credited to you in connection with the entry, and the party making payment to you via such entry (i.e., the originator of the entry) shall not be deemed to have paid you in the amount of such entry.

**INTERNATIONAL ACH TRANSACTIONS.** If your transaction originates from a financial agency that is outside of the territorial jurisdiction of the United States, it may be subject to additional review for compliance with the rules of the Office of Foreign Assets Control (OFAC). If additional review is required, the International ACH transaction will not be available to you until it passes final verification.

**NOTICE OF RECEIPT.** We will not provide you with notice of our receipt of the order, unless we are so requested by the transfer originator in the order. However, we will continue to notify you of the receipt of payments in the periodic statements we provide to you.

**CHOICE OF LAW.** We may accept on your behalf payments to your account which have been transmitted, that are not subject to the Electronic Fund Transfer Act, and your rights and obligations with respect to such payments shall be construed in accordance with and governed by the laws of the state where we are located.

**YOUR RESPONSIBILITY FOR BACK OF CHECK.** All negotiable paper ("checks") presented for deposit must be in a format that can be processed and we may refuse to accept any check that does not meet this requirement. All endorsements on the reverse side of any check deposited into your account must be placed on the left side of the check when looking at it from the front, and the endorsements must be placed so as not to go beyond an area located 1-½ inches from the left edge of the check when looking at it from the front. It is your responsibility to ensure that these requirements are met and you are responsible for any loss incurred by us for failure of an endorsement to meet this requirement.

**ELECTRONIC CHECKS.** Pursuant to Regulation CC, electronic checks may be treated the same as paper checks for check collection and processing purposes.

**STOP PAYMENTS.** You may stop payment on a check drawn against your account by a record or written order or other confirmation as allowed by us, provided that we receive the Stop Payment Order in a time and manner that gives us a reasonable opportunity to act on it. The Stop Payment Order must describe the item or account with reasonable certainty. Oral requests for a Stop Payment Order are binding on us for 14 calendar days only, and must be confirmed by you in a record or writing within that period. If the record or written confirmation is not received as specified, we will no longer be bound by your request. Upon receipt of confirmation in a record or writing, a Stop Payment Order on a check remains in effect for six months or until we receive a record or writing revoking the Stop Payment Order, whichever occurs first. If the item on which a Stop Payment Order has been placed has not cleared or been returned to you by the payee, you may renew the Stop Payment Order for an additional six months by providing a request to us in a record or writing within the time period the Stop Payment Order is in effect. A Stop Payment Order on an EFT debit will remain in effect until the earlier of 1) your withdrawal of the Stop Payment Order, or 2) the return of the debit entry, or, where a Stop Payment Order is applied to more than one debit entry under a specific authorization involving a specific payee (Originator), the return of all such debits. When a stop is placed on a multiple debit entry transfer, we may require your confirmation in a record or writing stating that you have canceled your authorization for the transfer with the payee (a Stop Payment Order does not revoke authorization). You will be charged a fee every time you request a Stop Payment Order, and for each Stop Payment Order renewal you make. You understand that we may accept the Stop Payment Order request from any of the authorized signers of the account regardless of who signed the check. A release of the Stop Payment Order may be made only by the person who initiated the stop payment request. Our acceptance of a stop payment request does not constitute a representation by us that the item has not already been paid or that we have had a reasonable opportunity to act on the request.

A Stop Payment Order may be placed on either a one-time transfer or on a multiple debit entry transfer. If you request a stop payment on a multiple debit entry transfer, we must receive the Stop Payment Order, orally or in a record or writing, at least three business days before a scheduled multiple debit entry. If the Stop Payment Order is requested for an Electronic Check Conversion or other one-time transfer, we must receive the request, orally or in a record or writing, in a period of time that provides us a reasonable opportunity to act on it prior to acting on the debit entry, otherwise this Stop Payment Order shall be of no effect. Oral stop payment orders are binding on us for 14 calendar days only, and must be confirmed by you in a record or writing within that period.

The Stop Payment Order shall be governed by the provisions of the Uniform Commercial Code 4A in effect in the state in which we are located, the Electronic Fund Transfer Act (Regulation E), *NACHA Operating Rules*, and any applicable state law.

We have a daily cutoff time by which we must receive any knowledge, notice, Stop Payment Order, set-off or legal process affecting our right or duty to pay a check. That cutoff time is one hour after the opening of your branch's banking day, following the banking day on which your branch received the check.

**DEATH OR INCOMPETENCY.** Neither your death nor a legal adjudication of incompetence revokes our authority to accept, pay, or collect items until we know of the fact of death or of an adjudication of incompetence and have a reasonable opportunity to act on it. To the extent permitted by law, even with knowledge, we may for 10 days after the date of death, pay checks drawn on or before the date of death unless ordered to stop payment by a person claiming an interest in the account.

**NON-SUFFICIENT FUNDS AND OVERDRAFTS.** If your account lacks sufficient funds to pay a check, preauthorized transfer or other debit activity presented for payment as determined by the available balance in your account, we may (1) return the item, or (2) pay the item at our discretion. The available balance is the amount of funds that you have in your account to spend without incurring an overdraft fee. The available balance reflects pending credits or debits and transactions and checks that have not yet cleared your account. For example, you

© 2001-2018 Compliance Systems, Inc. aec29b7-ee70b2eb - 2018.367.0.3

EXHIBIT "A"

have $100 in your account and spend $25 on groceries. The $25 may show as a pending transaction, and your available balance is $75. If you spend more than the available balance, then you may incur an overdraft fee. If we return the item without paying it, we may charge you a non-sufficient funds fee. If we do pay the item on your behalf, you will be responsible to pay the overdrawn balance and an overdraft fee. We will process checks and other debit items in the order identified in your Truth In Savings Disclosure.

**SIGNATURES.** Your signature on the Account Information document is your authorized signature. You authorize us, at any time, to charge you for all checks, drafts or other orders for the payment of money, that are drawn on us regardless of by whom or by what means your signature may have been affixed so long as the signature resembles the signature specimen in our files. For withdrawal and other purposes relating to any account you have with us, we are authorized to recognize your signature; and we will not be liable to you for refusing to honor signed instruments or instructions if we believe in good faith that one or more of the signatures appearing on the instrument or instructions is not genuine.

Further, most checks, and other items are processed automatically, i.e., without individual review of each item. Therefore, unless we agree in a separate writing, in our sole discretion, upon your request and due to unique circumstances to conduct individual review of each item, you agree that we are acting within common and reasonable banking practices by automatically processing checks, and other items, i.e., without individual review of each check, or item. You agree to indemnify, defend, and hold us harmless from and against all loss, costs, damage, liability, and other injury (including reasonable attorney fees) that you or we may suffer or incur as a result of this practice.

**FEES, SERVICE CHARGES AND BALANCE REQUIREMENTS.** You agree to pay us and are responsible for any fees, charges or balance/deposit requirements as provided in the Disclosures provided to you at the time you opened the account. Fees, charges and balance requirements may change from time to time. We also reserve the right to impose a service charge for cashing checks drawn on your account if the person cashing the check is not a customer of this Bank.

**SET-OFFS AND SECURITY INTEREST.** If you ever owe us money as a borrower, guarantor or otherwise, and it becomes due, we have the right under the law (called "set-off") and under this Agreement (by which you grant us a security interest in your deposit account and any other accounts held by you) to use your account funds to pay the debt, where permitted by law. If your account is held jointly, that is, if there is more than one account owner, we may offset funds for the debt of any one of the joint owners. Similarly, we may also set-off funds from the individual accounts of any one of the joint owners to satisfy obligations or debts in the joint account. The security interest granted by this Agreement is consensual and is in addition to our right of set-off.

**CLAIMS.** In response to any garnishment, attachment, restraining order, injunction, levy, citation to discover assets, judgment, reclamation, other order of court or other legal process ("Claim(s)"), we have the right to place a hold on, remove from your account(s) and/or remit to the designated third-party(ies) any amount on deposit in your account(s) as set forth in and required by such Claim(s). If the account(s) is/are held jointly, we may place the hold, remove from the account(s) and/or remit the amounts from the account(s) arising from any Claim(s) relating to any one or more of the account holders. In addition, we may charge against your account(s) any fee authorized by law in connection with the Claim(s) or as otherwise set forth in the Disclosures.

**ATTORNEYS' FEES AND EXPENSES.** You agree to be liable to us for any loss, costs or expenses, including reasonable attorneys' fees to the extent permitted by law, that we incur as a result of any dispute involving your account, and you authorize us to deduct any such loss, costs or expense from your account without prior notice to you. This obligation includes disputes between yourself and us involving the account and situations where we become involved in disputes between you and an authorized signer, another joint owner, or a third party claiming an interest in the account. It also includes situations where you, an authorized signer, another joint owner, or a third party takes action with respect to the account that causes us, in good faith, to seek the advice of counsel, whether or not we actually become involved in a dispute.

**LEGAL PROCESS AGAINST ACCOUNT.** You agree to be responsible for, to reimburse us, and/or have your account charged for any expenses or reasonable attorney fees we incur due to an attachment, garnishment, levy or subpoena of records of your account. Any garnishment or other levy against your account is subject to our right of set-off and security interest. We may restrict the use of your account if it is involved in any legal proceeding.

**OUR WAIVER OF RIGHTS.** You understand and agree that no delay or failure on our part to exercise any right, remedy, power or privilege available to us under this Agreement shall affect or preclude our future exercise of that right, remedy, power or privilege.

**YOUR WAIVER OF NOTICE.** By signing the signature card/Account Information form, you waive any notice of non-payment, dishonor or protest regarding any items credited to or charged against your deposit account. For example, if a check that you deposited is dishonored and returned to us, we are not required to notify you of the dishonor.

**NOTICE.** You are responsible for notifying us of any address or name changes, death of an account holder, or other information affecting your account. Notices must be in a form and manner acceptable to us with enough information to allow us to identify the account. Notice sent by you to us is not effective until we have received it and have had a reasonable opportunity to act upon it. Written notice sent by us to you is effective when mailed to the last address supplied.

**ONLINE OR MOBILE SERVICES.** If you open an account or obtain a product or service from us using our online or mobile services, we may record your personal information from a scan or a copy of your driver's license or other personal identification card, or we may receive an image or make a copy of your driver's license or other personal identification card. We may store or retain this information to the extent permitted by law.

© 2001-2018 Compliance Systems, Inc. aee29fb7-ce70b2eb - 2018.367.0.3
Account Agreement - Checking Account DD8001

www.compliancesystems.com

EXHIBIT "A"

**AMENDMENTS AND ALTERATIONS.** You agree that the terms and conditions governing your account may be amended by us from time to time. We will notify you of amendments as required by applicable law. Your continued use of the account evidences your agreement to any amendments. Notices will be sent to the most recent address shown on the account records. Only one notice will be given in the case of joint account holders.

**EFFECTIVE APPLICABLE LAWS AND REGULATIONS.** You understand that this Agreement is governed by the laws of Missouri, except to the extent that federal law is controlling. Changes in these laws and regulations may modify the terms and conditions of your account(s). We do not have to notify you of these changes, unless required to do so by law. If any of the terms of this Agreement come into conflict with the applicable law and are declared to be invalid or unenforceable, those terms will be nullified to the extent that they are inconsistent with the law and the applicable law will govern. However, this shall not affect the validity of the remaining provisions.

**DORMANT/INACTIVE ACCOUNT INFORMATION.** If a checking account has no customer-initiated activity other than an automated transfer for more than 334 days, a $10 monthly fee may be assessed. This fee may only be applied by the 365th day since last activity for account holders in the State of Texas. If a savings or money market account has no customer-initiated activity other than an automated transfer for more than 1,642 days, a $10 monthly fee may be assessed. This fee does not apply to account holders in the State of Texas.

**ORDER OF PAYMENT FROM YOUR ACCOUNT.** You understand that when two or more items are presented for payment from your account on the same day, the law allows us to pay them (i.e., charge these items against your account) in any order. It is our intention to pay (i.e., charge against your account) items presented for payment in the same day in the following order: First, (a) items presented by you in person to a bank teller, (b) items presented by a payee in person to a bank teller, (c) transfers initiated over the telephone, by our internet banking, or our phone banking system, and (d) wire transfers out of your account, will be paid in the order of the lowest dollar amount to the highest dollar amount, and Second, items presented for payment via ATM withdrawal and via debit card transactions, will be paid in the order of the lowest dollar amount to the highest dollar amount, and Third, various bank service charges and fees, and returned deposited items, will be paid in the order of lowest dollar amount to highest dollar amount, and Fourth, items presented for payment via checks written against your account and ACH (automated clearing house) transactions, will be paid in the order of the lowest dollar amount to the highest dollar amount. You understand that the order in which we pay items presented for payment from your account affects the point at which your account may become overdrawn and when related fees will be charged by us against your account. Nothing in this paragraph is intended or should be interpreted to imply that the bank has any obligation to pay items presented for payment from your account when your account is overdrawn or when payment of the item would cause your account to become overdrawn, any such items that the bank may pay are subject to our policies and procedures and applicable fees.

**ACCOUNT CLOSING.** You or we may close the account at any time without cause. We may close it without notice to you if we reasonably believe it will prevent loss to us or you have violated this agreement. You will pay any fees and costs for closing the account, as well as any outstanding items. Our rights and your obligations survive any closing of the account or cancellation of this agreement. You will not claim we wrongfully dishonored items we return unpaid on or after the day the account was closed.

### NOTICE OF POTENTIAL DISCLOSURE OF NEGATIVE INFORMATION TO CONSUMER REPORTING AGENCIES

This notice is being furnished pursuant to the Fair Credit Reporting Act (15 U.S.C. 1681) as amended by the Fair and Accurate Credit Transactions Act of 2003 (FACT Act).

## NOTICE

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

© 2001-2018 Compliance Systems, Inc. aoo29fb7-co70b2eb - 2018.367.0.3
Account Agreement - Checking Account DD8001

www.compliancesystems.com



# EXHIBIT B

EXHIBIT "A"

# SCHEDULE OF FEES

| | |
|---|---|
| **Account Closing Fee** | $25.00 for accounts closed during the first 90 days |
| **ATM/Debit Card Replacement** | $5.00 |
| **ATM Network Fee** | $2.00 per transaction excluding Landmark Bank ATMs |
| **ATM Surcharge** | $4.00 per transaction for non-Landmark Bank ATM cardholders |
| **Bill Pay Overnight Checks** | $21.95 per check |
| **Cash Card/Payroll Card** | $4.95 per card, $1.00 or 1% per load, whichever is greater |
| **Cashier's Check** | $5.00 |
| **Check Cashing (non-customer)** | $10.00 or 1%, whichever is greater |
| **Coin Counting (non-customer)** | $5.00 or 1%, whichever is greater |
| **Coin Wrapped (non-customer)** | $0.05 per roll |
| **Collection Fees** | |
|     Customer | $15.00 |
|     Non-Customer | $25.00 |
| **Deposited Check Returned Unpaid** | $4.00 |
| **Dormant Fee for Checking Accounts** | $10 per month. An account is dormant if it has no customer initiated activity other than an automated transfer for more than 334 days. Fee may only be applied by the 365th day since last activity for account holders in the State of Texas. |
| **Dormant Fee for Money Market and Savings Accounts** | $10 per month. An account is dormant if it has no customer initiated activity other than an automated transfer for more than 1,642 days. This fee does not apply to account holders in the State of Texas. |
| **Foreign Currency Orders** | $20.00 |
|     Small Transaction Fee (<$300.00) | Additional $10.00 |
|     Standard Overnight Shipping | Additional $10.00 |
|     Priority Overnight Shipping | Additional $15.00 |
| **Foreign Currency Draft Orders** | $20.00 |
| **Foreign Currency / Draft Collection** | $25.00 |
| **Garnishment and Levy** | $50.00 per item |
| **Idle Account Fee for Business Checking Accounts Only** | $5.00 per month beginning the 6th month of no customer initiated transactions until dormant status is reached.  To be first assessed in December of 2017. |
| **Image Copy** | $1.00 per item |
| **International Transaction Fee - ATM/Debit Card** | 3.0% of transaction amount |
| **Letter of Balance Verification** | $2.00 |
| **Loan Amortization Schedule** | $2.00 |
| **Night Deposit Lock Bag** | $25.00 |
| **Overdraft and Insufficient Funds** | $29.00 per item. Fee may be imposed for covering overdrafts created by check, in person withdrawal, ATM withdrawal, or electronic means. |
| **Overdrawn Account Fee (business accounts only)** | 16.9% on overdrawn balances assessed monthly |
| **Overdraft Protection - Transfer** | $5.00 per occurrence, $10.00 annual fee per account covered |
| **Paper Statement Fee for Essential Business Checking Only** | $5.00 per month |
| **Re-Cleared Deposited Item** | $2.00 |
| **Re-Issue Tax Form** | $2.00 |
| **Research and Reconciling** | $25.00 per hour and $1.00 per copy; $25.00 minimum |
| **Returned Deposited Item Exception Handling** | $4.00 |
| **Safe Deposit Box Fees** | |
|     Late Payment Fee | $5.00 |
|     Lost Key (two keys issued and box relocked) | $25.00 |
|     Forced Entry | $150.00 |
| **Savings Withdrawal Fee** | Excess debit fee of $2 per teller withdrawal, telephone or computer transfer, draft or ATM withdrawal/transfer for each debit in excess of 3 during a month. |
| **Special Statement with Check Images** | $5.00 |
| **Special Statement without Check Images** | $3.00 |
| **Stop Payment** | $29.00 |
| **Wire Transfer Domestic Incoming** | $10.00 |
| **Wire Transfer Domestic Outgoing** | $20.00 |
| **Wire Transfer Foreign Incoming** | $10.00 |
| **Wire Transfer Foreign Outgoing** | |
|     Sent in US Dollars | $50.00 |
|     Sent in Foreign Currency | $25.00 |
| **Zipper Bag** | $5.00 |

5/6/2019

EXHIBIT "A"