IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SUSAN PACE, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:21-CV-04119-BCW ) |
| LANDMARK BANK, | ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant's motion to compel arbitration and stay the action (Doc. #15). The Court, being duly advised of the premises, grants said motion.

**BACKGROUND**

This case is a breach of contract action between Plaintiff Susan Pace and Defendant Landmark Bank ("Landmark"), an entity with whom Plaintiff formerly maintained a banking relationship. In February 2020, Landmark merged with Simmons Bank ("Simmons"). After the merger, Plaintiff, as well as other Landmark customers, received a welcome packet from Simmons containing two documents which explained the terms and conditions of the contract for banking with Simmons ("the 2020 Simmons Agreement"). (Doc. #16). Specifically, the 2020 Simmons Agreement contained a notice that stated, "[y]our Landmark Bank account will transition to Simmons Bank effective Feb. 18, 2020." The packet also contained a notice of change section, as follows:

**NOTICE OF CHANGE:**

This is a notice of change to the Terms and Conditions of your account with us. Effective Feb. 18, 2020, your account(s) shall be governed by these terms and conditions. Continued use of your account(s) after receipt of these terms

1

and conditions constitutes acceptance of, and agreement to, the terms and conditions.

(Doc. #16-2 at 4).

Additionally, there was a change-in-terms provision, which stated: "[i]f we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s)." (Doc. #16). Pace maintained her account after receiving this notice and thus entered a banking relationship with Simmons.

On December 10, 2020, Simmons emailed Pace her monthly bank statement and provided notification of amended banking contract terms. (Doc. #26-12). The notice included the full text of the amended Terms and Conditions ("Terms and Conditions"). The email stated

> **NOTICE OF UPDATED CONTRACT TERMS** – Effective February 1, 2021, Simmons Bank has updated the Terms and Conditions for your account(s). The updated Terms and Conditions are included with your eStatement. For a summary of changes, including the new arbitration clause, please visit simmonsbank.com/terms-and-conditions or call 866.246.2400. Also included are an updated Funds Availability Policy and the annual Privacy Notice.

(Doc. #26-12). Further, the notice contained a bolded heading titled "Notice of Change to the Terms and Conditions of the Account":

> We have updated the Terms and Conditions of your account with us. Effective February 1, 2021, your account(s) shall be governed by the Terms and Conditions below. Continued use of your account(s) constitutes your agreement to these updated Terms and Conditions. Please visit simmonsbank.com/terms-andconditions for summary of changes, including the changes to how we agree to resolve disputes between us, which now will be through binding individual arbitration. If you do not have access to the internet, please contact us Monday- Friday between 7:30 am and 6:00 pm (CT) or 8:00 – noon (CT) on Saturdays at 866.246.2400 to request that we mail you the summary of the changes.

(Doc. #16-2 at 8).

The Terms and Conditions otherwise stated, in pertinent part, an Arkansas choice-of-law provision (Doc. #16-2 at 8) and the following dispute resolution provision:

2

**DISPUTE RESOLUTION BY BINDING ARBITRATION**

> This arbitration provision is optional. If you do not wish to accept it, you must follow the instructions in paragraph (9) below to reject arbitration. Unless you timely reject arbitration, this arbitration provision is binding on you and us.

(Doc. #16-2 at 11). Paragraph 9 stated, "[i]f you do not wish to arbitrate, you have 30 days to reject this arbitration provision by sending a rejection notice to the Notice Address above by certified mail." (Doc. #16-2 at 11). Further, in paragraph 1, the provision stated, "[i]n this arbitration provision only, references to "we", "us", and "our" mean the financial institution and its parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as each of those entities' agents and employees." (Doc. #16-2 at 11).

The arbitration provision in the Terms and Conditions contained specific examples of types of claims subject to arbitration: "[t]his agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between you and us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory; claims that arose before this or any prior Agreement . . . ." (Doc. #16-2 at 11). The Terms and Conditions also stated the Federal Arbitration Act (FAA) governs the interpretation and enforcement of the provisions. (Doc. #16-2 at 11).

Pace opened and viewed the Terms and Conditions and continued to use her checking account. Pace did not close her account or submit a rejection notice to opt out of arbitration.

On May 13, 2021, Plaintiff filed a complaint in the Circuit Court of Boone County, Missouri, alleging that beginning in July 2019, Landmark improperly assessed and collected $58 fees on transactions for which $29 fees should have been assessed.[1] Plaintiff's complaint thus

---

[1] At the time Pace filed the instant matter, four other cases had been filed in other courts relating to overdraft fees from Simmons and/or Landmark: (1) Tannehill v. Simmons Bank, No. 3:19-cv-140-DPN (E.D. Ark.); (2) Walkingstick v. Simmons Bank, Case No. 6:19-03184-CV-RK (W.D. Mo. Jan. 16, 2020); (3) Pace v. Landmark Bank, No. 20BA-CV00244, (Mo. Ci. Ct., Boone Co.) (filed Jan. 14, 2020) and (4) Shaunda Wilkins v. Simmons Bank, No.

seeks relief against Landmark for a breach of contract, including a breach of the covenant of good faith and fair dealing. Defendant removed Plaintiff's claims on the basis of diversity jurisdiction on June 11, 2021. (Doc. #1). On July 19, 2021, Defendant filed the instant motion to compel arbitration and stay the action, arguing Pace accepted the Terms and Conditions including the arbitration provision and therefore is bound to arbitrate her claims. (Doc. #15).

## LEGAL STANDARD

When reviewing a motion to compel arbitration, a district court "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." Robinson v. EOR-ARK, LLC, 841 F.3d 781, 784 (8th Cir. 2016). Under the FAA, the scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001). Thus, "[a] motion to compel arbitration must be granted if a valid arbitration clause exists which encompasses the dispute between the parties." Donelson v. Ameriprise Fin. Servs., 999 F.3d 1080, 1089 (8th Cir. 2021) (citations omitted).

## ANALYSIS

In the instant motion to compel arbitration and stay, Defendant argues the arbitration clause in the Terms and Conditions is enforceable because Pace validly agreed to arbitrate, and her claims fall within the scope of the agreement. Defendant argues the arbitration clause is enforceable under both Arkansas and Missouri law. Plaintiff argues Missouri law governs the dispute notwithstanding the Terms and Conditions' choice-of-law provision for Arkansas law. Plaintiff further argues the motion to compel arbitration should be denied because she did not assent to a

---

3:20-cv-116-DPM (E.D. Ark.). These cases were filed prior to December 10, 2020, the date in which the terms and conditions were updated. Neither party has addressed any issues regarding duplicative litigation.

4

retroactive arbitration clause; the unilateral modification of the terms renders the addition of arbitration clause illusory for lack of consideration; and even if a valid contract was formed, the arbitration clause only applies to disputes with Simmons, not its predecessors.

Because state contract law governs whether the parties have entered into a valid arbitration agreement, the Court first considers which state's substantive law applies. Robinson, 841 F.3d at 784.

Defendant asserts the arbitration clause is valid under both Missouri and Arkansas law. Plaintiff argues, despite the Arkansas choice-of-law provision, the Court should apply Missouri law because Missouri has the most significant relationship with the litigation because Plaintiff is a Missouri resident, and originally contracted with a Missouri bank to open an account at a Missouri branch, and Plaintiff continues to bank in Missouri. (Doc. #25).

Missouri, the forum state, has adopted Restatement (Second) of Conflict of Laws §§ 188 and 193. St. Paul Fire & Marine Ins. Co. v. Bldg. Constr. Enters., 526 F.3d 1166, 1168 (8th Cir. 2008). "Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is 'contrary to a fundamental policy of Missouri.'" Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009) (citing Kagan v. Master Home Prods. Ltd., 193 S.W.3d 401, 407 (Mo. Ct. App. 2006)).

The Court however need not determine whether Arkansas or Missouri law applies, because even assuming Missouri substantive law governs, the arbitration clause is valid. Donelson, 999 F.3d at 1089 (finding it unnecessary to determine whether the Minnesota choice-of-law provision in the arbitration contract controlled or whether Missouri law applied because the arbitration clause was valid) (citing ABC, Inc. v. Aereo, Inc., 573 U.S. 431, 445 (2014) (assuming for the sake of argument that one part of the losing party's argument was correct but holding that, even so, the

5

losing party would not prevail for other reasons)). Therefore, for the sake of discussion, the Court applies Missouri law.

The issue before the Court is whether the arbitration provision is valid and enforceable. Defendant argues because Pace continued to use her checking account after she received notice of the updated terms, she validly agreed to the arbitration provision. Plaintiff argues her silence could not constitute an acceptance to the updated terms, therefore the motion to compel arbitration should be denied.

### I. A valid contract was formed between the parties.

A valid contract is formed if there is an offer, acceptance, and consideration. Baker v. Bristol Care, Inc., 450 S.W.3d 770, 772 (Mo. 2014). When a contract is amended to include an arbitration provision, there is affirmative acceptance of the amendment if a client has ample opportunity to consider and time to opt out of the specific provision, but instead the client continues to use the contracted-for service. Cicle, 583 F.3d at 555 (compelling arbitration after applying Missouri law and finding plaintiff accepted the updated terms of her credit card contract because she failed to reject the changes to her account within thirty days and continued to use her credit card).

Here, Simmons notified Pace of the addition of the arbitration clause by sending an email including the updated terms and conditions and a summary of the changes. (Doc. #26-12). Further, the Terms and Conditions contain bold headings explaining dispute resolution is through binding arbitration and the user has a right to reject the arbitration provision. (Doc. #26-12). The first sentence under the "dispute resolution by binding arbitration" heading plainly states, "this arbitration provision is optional." (Doc. #16-2 at 11). The paragraph goes on to state, "[i]f you do not wish to accept it, you must follow the instructions in paragraph (9) below to reject arbitration.

Unless you timely reject arbitration, this arbitration provision is binding on you and us." (Doc. #16-2 at 11). Paragraph 9 explains if the account owner did not agree to arbitration, they had 30 days after the "effective date" of the amended Terms and Conditions to send Simmons a Rejection Notice. (Doc. #16-2 at 11). Plaintiff took no steps to send a rejection notice to Simmons and continued to use her account, even after given ample time to do so. Thus, based on Plaintiff's continued usage of her checking account, the Court finds Plaintiff accepted the Terms and Conditions. Cicle, 583 F.3d at 555.

Defendant cites on Donelson v. Ameriprise Fin. Servs., 999 F.3d 1080 (8th Cir. 2021) to establish that the contract was supported by consideration. Plaintiff nevertheless argues because Defendant unilaterally altered the terms and conditions, consideration was illusory, thus rendering the Terms and Conditions unenforceable.

In Donelson, the Eighth Circuit considered whether an arbitration clause was binding on a plaintiff who, on the advice of her financial advisor and without reading the terms of the contract, signed an account application which included an arbitration clause. Id. at 1086. The agreement stated "[t]he use of your account after the mailing of any written notice . . . shall constitute your acknowledgement and agreement to be bound thereby." Id. at 1091. Applying Missouri substantive law, the court found there was mutual assent to the arbitration clause and the arbitration provision was binding between the financial services company and the plaintiff. Id.

The court explained, "[i]n general, bilateral contracts are supported by consideration and enforceable when each party promises to undertake some legal duty or liability." Id. at 1085. If, however, "the promises of one party are illusory rather than binding, there is no consideration. A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations." Id. (citing Baker, 450 S.W.3d at 776). Consideration is not illusory when a

7

modification to a client agreement, such as the one here, includes language that indicates continued use of your account shall constitute an acknowledgement and agreement to be bound thereby. Id. at 1091. The court found the consideration between plaintiff and the financial services company was not illusory because the company did not have the unilateral right to amend the client agreement because any changes to the terms required the acknowledgement of plaintiff through continued use of his account. Id. Therefore, the arbitration clause was valid and binding on the parties. Id. at 1094.

Like Donelson, Plaintiff's continued use of her checking account constituted consideration to the Terms and Conditions. Thus, Plaintiff's consideration was not illusory, and the arbitration provision in the Terms and Conditions is enforceable.

## II. Plaintiff's claims fall within the scope of the arbitration provision.

Having found the parties agreed to arbitrate, the Court next considers whether Plaintiff's claims fall within the scope of the arbitration clause. Defendant argues Plaintiff's claims are within the scope of the arbitration clause. Plaintiff argues that the because the complaint is against Landmark, the claims are not subject to arbitration.

Paragraph 1 of the Terms and Conditions provides claims are subject to arbitration as follows:

> (1) **Claims Subject to Arbitration:** Except as specified in paragraph (2) below, any dispute or claim between you and us must be arbitrated if either party elects arbitration of that dispute or claim. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
>
> • claims arising out of or relating to any aspect of the relationship between you and us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory;
> • claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising or disclosures for any of our products or services) …

(Doc. #16-2 at 11). The Terms and Conditions also state the arbitration provision applies to "the financial institution, Simmons Bank, and its parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as each of those entities' agents and employees." (Doc. #16-2 at 11).

Plaintiff nevertheless argues this provision is inconsistent with the contract's language because for the first time in the Terms and Conditions the terms "we", "us", and "our" "mean the financial institution and its parents, subsidiaries, affiliates, predecessors, successors." However, Plaintiff has not cited any authority to support the position that this defined term renders the arbitration provision and/or the entire Terms and Conditions unenforceable. The language of the Terms and Conditions thus undermines Plaintiff's argument, and the Court finds "we" is not an inconsistent or ambiguous term. Therefore, the arbitration clause applies to Pace's complaints against both Landmark and Simmons.

Finding the provision applies to both Landmark and Simmons, the Court lastly looks at the subject of the claims. Plaintiff's claim for breach of contract centers on the overdraft and insufficient fund fees she incurred. Plaintiff alleges Landmark reprocessed a previously declined item and charged a fee upon reprocessing. (Doc. #1-1 ¶ 36). As such, "it was bad faith and totally outside of Plaintiff's reasonable expectations for Landmark to use its discretion to assess two or more fees on an item." (Doc. #1-1 ¶ 56). Because the claims are based in contract, Plaintiff's claims fall within the scope of arbitration. Therefore, the Court grants Defendant's motion to stay this action and compel arbitration. Accordingly, it is hereby

ORDERED Defendant's motion to compel arbitration and stay the action (Doc. #15) is GRANTED. This matter is STAYED pending arbitration. It is further

ORDERED the Parties are to file a status report informing the Court of the status of the arbitration, no later than nine months from the date of entry of this Order.

IT IS SO ORDERED.

DATED: <u>January 11, 2022</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT